# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

DEBRA HARDING, as Parent and
Next Friend of B.H.,
41 Cavendish Circle
Salem, MA 01970,
and
DEBRA HARDING, Individually
41 Cavendish Circle
Salem, MA 01970

PLAINTIFFS,
v.

THE DEPARTMENT OF CHILDREN & FAMILIES
600 Washington Street
Boston, MA 02111

MARYLOU SUDDERS, in her official
capacity as Secretary of the
Massachusetts Executive
Office of Health & Human Services,
Executive Office of Health & Human Services,
One Ashburton Place, 11th Floor,
Boston, MA 02108

LINDA SPEARS, in her official
capacity as Commissioner of the
Massachusetts Department of Children and Families,
600 Atlantic Avenue,
Boston, MA 02111

LYNDA Y. BROWNE, in her official
capacity as a Social Worker employed
by the Massachusetts Department
of Children and Families, and Individually
Department of Children and Families
Haverhill Area Office
3 Ferry St.
Bradford, MA 01835

1

SHANNON K. DAIGNAULT in her official capacity
as a Social Worker employed by the
Massachusetts Department of Children and Families,
and Individually
Department of Children and Families
Cape Ann Area Office
45 Congress St., Building 4
Salem, MA 01970

MARIA DELANEY in her official capacity
as a Social Worker employed by the
Massachusetts Department of Children
and Families, and Individually
Department of Children and Families
Cape Ann Area Office
45 Congress St., Building 4
Salem, MA 01970

MARY DOHERTY in her official capacity
as a Social Worker employed by the
Massachusetts Department of Children and Families,
and Individually
Department of Children and Families
Cape Ann Area Office
45 Congress St., Building 4
Salem, MA 01970

JOHN DOYLE in his official capacity
as a Social Worker employed by the
Massachusetts Department of Children and Families,
and Individually
Department of Children and Families
Cape Ann Area Office
45 Congress St., Building 4
Salem, MA 01970

PAMELA B. GRAY in her official capacity
as a Social Worker employed by the
Massachusetts Department of Children and Families,
and Individually
Department of Children and Families
Cape Ann Area Office
45 Congress St., Building 4
Salem, MA 01970

LYN MELLO in her official capacity
as a Social Worker employed by the
Massachusetts Department of Children and Families,
and Individually
Department of Children and Families
Cape Ann Area Office
45 Congress St., Building 4
Salem, MA 01970

RENA L. UGOL in her official capacity
as a Social Worker employed by the
Massachusetts Department of Children and Families,
and Individually
Department of Children and Families
Cape Ann Area Office
45 Congress St., Building 4
Salem, MA 01970

THOMAS BERNARD PLANTE
a/k/a TOMAS BERNARD PLANTE
67 Peaslee Crossing Road
Newton, New Hampshire, 03858

GINETTE KANE PLANTE
a/k/a GINETTE MURPHY, GINETTE JOHNSON, and GINETTE KANE
67 Peaslee Crossing Road
Newton, New Hampshire, 03858

DEFENDANTS

<u>COMPLAINT</u>
<u>INTRODUCTION</u>

1.      This is a civil rights action brought by Plaintiff, Debra Harding ("Ms. Harding"),

Individually and as a Parent and Next Friend of B.H. As a result of the abuse and neglect

to B.H. by her biological father, Thomas Bernard Plante ("Mr. Plante"), the Harding

family endured six intrusive investigations over a period of ten years (2005-2015) by the

Massachusetts Department of Children and Families ("DCF").

2.     DCF is the Commonwealth's state agency responsible for protecting children from abuse and neglect; this protection includes supporting the right of a child to "…sound health in addition to normal physical and mental development"[1].

3.     For ten years, between 2005 and 2015, in direct opposition to their reason for existence, DCF actively attempted to prevent Ms. Harding from protecting her child (B.H.) against the onslaught of physical abuse, emotional abuse, and convicted neglect of Mr. Plante and-starting in 2011-the emotional abuse and convicted neglect of Ginette Kane Plante ("Mrs. Kane Plante") and physical abuse by Mrs. Kane Plante's daughter ("A.M").

4.     DCF failed to adhere to Mass General Laws ("M.G.L."): CHAPTER 119, Section 1, to protect the best interests of B.H. Instead DCF protected the abusers of B.H., Mr. Plante and Mrs Kane Plante, permitting these two adults unfettered access to cruelly continue their abuse of B.H.

5.     Defendants, including Lynda Y. Browne, Shannon K. Daignault, Maria Delaney, Mary Doherty, John Doyle, Pamela B. Gray, Lyn Mello, and Rena L. Ugol are sued in their official capacity and individually.

6.     Mr. Plante and Mrs. Kane Plante are sued individually.

7.     The remaining Defendants, Marylou Sudders, Linda Spears, and The Department of Children and Families are each sued in his, her, or its official capacity only and not individually (collectively "Defendants").

8.     Plaintiff, Debra Harding, as Parent and Next Friend of B.H., states that at the time of the incidents giving rise to this Complaint, B.H., was and continues to be a resident of 41 Cavendish Circle, Salem, Essex County, Massachusetts.

---

1 Mass General Law (M.G.L.) 110 CMR 1.01

9.     Plaintiff, Debra Harding, Individually, states that at the time of the incidents giving rise to this Complaint, B.H., was and continues to be a resident of 41 Cavendish Circle, Salem, Essex County, Massachusetts.

10.    Defendant Lynda Y. Browne[2] is a Licensed Social Worker Associate ("LSWA") employed by The Department of Children and Families since 2004, previously with the Cape Ann Area Office, located at 45 Congress St., Building 4, Salem, MA 01970, as a child protective service worker at all relevant times, and is liable for her actions in both individual and official capacities. Lynda Browne worked with Ms. Lyn Mello in 2011 to falsify a 51A report filed by a mandated reporter with concerns of Mr. Plante's physical abuse of B.H. In 2013, Ms. Browne in collusion with Mr. Plante – who continued their relationship beyond the closing date of the 2013 investigation - falsified information to continue a campaign of harassment and torment of Ms. Harding for eighteen months with the constant threat of taking her child from her-despite having absolutely no evidence. During Lynda Browne's 2013 investigation, Mr. Plante revealed to his employer he was having domestic abuse issues at home with Mrs. Kane Plante. Ms. Browne never included this critical information of the violent environment B.H. was being exposed to in New Hampshire within her report[3].

11.    Shannon K. Daignault[4] is a LSWA employed since 2011 by The Department of Children and Families, with the Cape Ann Area Office, located at 45 Congress St., Building 4, Salem, MA 01970, a child protective service worker at all relevant times, and is liable for her actions in both individual and official capacities. In the same year she was hired, Ms.

---

2 LSWA #410244
3 Each of the Defendants violations are provided in further detail in the section: "FACTUAL BACKGROUND APPLICABLE TO ALL COUNTS
4 LSWA# 410556

Daignault was assigned to investigate Mr. Plante for his admitted physical abuse of then

eight year old B.H. Ms. Daignault postponed seeing B.H. until the bruises had faded,

misrepresented and falsified interviews by collateral witnesses-for example claiming the

fourth mandated reporter in 2011 who contacted DCF about Mr. Plante's abuse of B.H.,

had no concerns about Mr. Plante-, and unbelievably chose to attack and belittle the very

child she had a duty to protect.

12.    Defendant Maria Delaney[5], is a LSWA employed since 2004 by The Department of

Children and Families, with the Cape Ann Area Office, located at 45 Congress St.,

Building 4, Salem, MA 01970, a child protective service worker at all relevant times, and

is liable for her actions in both individual and official capacities. In January 2015, Ms.

Delaney, supervised by Rena Ugol, and consulting with Lynda Browne, shoddily

investigated Mr. Plante of sexual abuse of B.H. Despite three 51A's filed against Mr.

Plante for sexual assault, Ms. Delaney allowed Ms. Ugol to report to the Probate Court

midway through the investigation that it would "probably not be supported"-and it was

not. Maria Delaney by her inaction sacrificed B.H. to be a victim of Mr. Plante's sexual

deviancy. Yet this was not enough, Ms. Delaney also cruelly attacked Ms. Harding by

claiming to the Probate Court that the 2013 investigation by Lynda Browne had been

"substantiated"-yet could not provide any documents which had this categorization.

13.    Mary Doherty[6] is a Licensed Certified Social Worker ("LCSW") employed since 2004 by

The Department of Children and Families, with the Cape Ann Area Office, located at 45

Congress St., Building 4, Salem, MA 01970, a child protective service worker at all

relevant times, and is liable for her actions in both individual and official capacities. In

---

5 LWSA #410247
6 LCSW #2030973

2013, Ms. Doherty supervised[7] LWSA Lynda Browne, reviewing and approving Ms.

Browne's false filings with the intent to continue the harassment of Ms. Harding by

Lynda Browne. For example, Ms. Doherty herself was present at the first meeting, yet

approved Ms. Browne entering a false earlier date to give the appearance of meeting

procedural guidelines. This pattern of altering dates and falsifying interviews with the

approval of her supervisors Mary Doherty-and Pamela B. Gray-was continued throughout

the eighteen months of harassment by Lynda Browne.

14.    Defendant John Doyle, employed since 2004 by The Department of Children and

Families, with the Cape Ann Area Office, located at 45 Congress St., Building 4 Salem,

MA 01970, a supervisor or Area Director at all relevant times, and is liable for his actions

in both individual and official capacities. In 2012, Ms. Harding filed complaints with the

Division of Professional Licensure ("DPL") against DCF social workers Lyn Mello,

Shannon K. Daignault, and Rena Ugol for their unethical actions. In 2013, John Doyle

failed in his capacity as Area Operations Manager; he had a duty of care and allowed Ms.

Mello and Ms. Ugol to manipulate a false case against Ms. Harding which traumatized

Ms. Harding and her daughter, B.H. for over eighteen months. In 2015, Mr. Doyle first

accepted and then canceled a meeting with Ms. Harding in her attempt to correct the false

statement of "substantiated". Mr. Doyle claimed he had spoken with Pamela B. Gray, and

Rena L. Ugol about the case and did not see a reason to meet. Mr. Doyle also offered that

Ms. Ugol-despite being involved since 2005 and reporting to the court about Mr. Plante

in 2015-claimed she had no knowledge of Ms. Harding or B.H.

---

[7] M.G.L. 258 CMR 12.04 focuses on the scope of practices for a LWSA and requires supervision by a social worker with a higher licensed level.

15.    Defendant Pamela B. Gray[8] is a Licensed Social Worker ("LSW") employed since 2004 by The Department of Children and Families, with the Cape Ann Area Office, located at 45 Congress St., Building 4 Salem, MA 01970, in a supervisory role at all relevant times as an Area Clinical Manager[9], and is liable for her actions in both individual and official capacities. Ms. Gray in her documented role as both supervisor and Area Program Manager actively ignored documented evidence against Mr. Plante which included 51A filings related to neglect in 2009, physical abuse in 2011, neglect resulting in serious bodily injury to B.H. in 2012, and sexual abuse in 2015. Ms. Gray was the supervisor who approved the non-supported findings in each of these filings, her lack of compassion starting in 2009 by not protecting a six-year-old little girl from the abuse of her biological father, raises questions about her ability to perform her current role as an Area Clinical Manager.

16.    Defendant Lyn Mello[10], is a LCSW employed since 2004 by The Department of Children and Families, and promoted in 2012 to the title of Area Program Manager ("APM"), with the Cape Ann Area Office, located at 45 Congress St., Building 4 Salem, MA 01970, a supervisor at all relevant times, and is liable for her actions in both individual and official capacities. Documented evidence shows Lyn Mello actively attempted to prevent the 2011 investigation of Mr. Plante for physical abuse of B.H. by falsifying information and screening out filings by mandated reporters. Her actions caused Ms. Harding to file a complaint against Ms. Mello with the DPL in 2012. In 2013, Ms. Mello violated the federal law which prohibits retaliation for the filing of a complaint with the DPL. In addition, by not recusing herself, and using her new role as APM to viciously retaliate

---

8 LSW  #3029656
9 DCF Defendants titles were obtained in 2016 via http://massopenbooks.org/payrolls/
10 LCSW #214110

against and attack Ms. Harding, Ms. Mello proves the validity of the complaint against her which questioned her ability to perform her role in addition to concerns of her unethical actions.

17. Defendant Rena L. Ugol[11] is a Licensed Social Worker, ("LSW"), employed since 2004 by The Department of Children and Families, with the Cape Ann Area Office, located at 45 Congress St., Building 4 Salem, MA 01970, a supervisor at all relevant times, and is liable for her actions in both individual and official capacities. From her first involvement in 2005 to hinder the investigation of Mr. Plante for physical abuse of B.H. (then under two years old), to her obstructionist acts during the 2015 investigation of Mr. Plante for sexual assault of B.H. (then twelve years old), Ms. Ugol has enabled Mr. Plante to continue over a decade of abuse against B.H. Ms. Ugol's usage of her supervisory role to influence reports against Mr. Plante have led to consistent decisions of "not supported" and screened out 51A filings by multiple respected mandated reporters. In addition, Ms. Ugol used her position to viciously attack Ms. Harding in 2013 in retaliation for Ms. Harding filing a complaint against Ms. Ugol with the DPL in 2012. Similar to Ms. Mello, Ms. Ugol's failure to recuse herself from the 2013 investigation and her self-documented actions prove the validity of the DPL complaint and brings into questions her ability to perform her role.

18. Thomas Bernard Plante is an individual residing at 67 Peaslee Crossing Road Newton, New Hampshire, 03858 and is liable for his actions individually.

19. Ginette Kane Plante is an individual residing at 67 Peaslee Crossing Road Newton, New Hampshire, 03858 and is liable for her actions individually.

<u>JURISDICTION AND VENUE</u>

---

11 LSW #3030008

20.     This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331, 1333, 1343 (a) (3)

        and 42 U.S.C. §§ 1983, 1985, and 1986.

21.     Venue is proper pursuant to 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1332. The claims arise

        in this District and there is diversity of citizenship.


                    FACTUAL BACKGROUND APPLICABLE TO ALL COUNTS


22.     B.H. is the thirteen-year-old biological child of Debra Harding and Thomas Plante. She is

        a child who should have been protected by the federally provisioned safeguards of the

        Department of Health and Human Services ("DHHS") as executed by Massachusetts

        DCF to investigate allegations of child abuse and neglect, deliver services to preserve her

        family, and be an advocate to keep her free from harm. B.H. seeks both declaratory and

        injunctive relief to remedy violations of her legal rights as DCF actively abandoned their

        mandate to protect B.H. from physical and psychological abuse at the hands of Mr.

        Plante[12] and Mrs. Ginette Kane Plante-both of whom were found guilty of neglect of

        B.H. in 2013 resulting in traumatic physical injury which continues to effect B.H. to this

        day

23.     Debra Harding is and always has been the primary caretaker of B.H. and provides a

        nurturing, safe and supportive environment for B.H. to thrive academically, socially, and

        spiritually. As a single mother and primary financial support for B.H., Ms. Harding is and

        has been actively involved in the community with school and extracurricular activities to

        provide B.H. with an extended circle of family and friends, in addition to maintaining a

---

12 DCF actively ignored judgments of the Essex Probate and Family Court when these judgments were in direct contradiction to
DCF's findings and knowingly disregarded volumes of evidence which proved Mr. Plante and Mrs. Kane Plante were abusing
B.H. and lying to government authorities.

highly demanding technical role as an Enterprise Architect. Furthermore, Ms. Harding is and always has been the parent solely responsible for caring for B.H. when she is ill and ensuring she receives the necessary, timely, and appropriate medical care. Over a ten-year period, between 2005 and 2015, eight mandated reporters have filed complaints pursuant to M.G.L. c. 119, § 51A ("51A report") with the Massachusetts Department of Children and Families (DCF), against Thomas Plante for physical abuse, neglect, and sexual assault of his now thirteen-year-old daughter B.H.

24.   Each of these mandated reporters is respected in their community and recognized for their experience with children. They include the Newton, NH police department, B.H.'s pediatrician, emergency room nurse (with support from the Chief of Pediatrics) with the North Shore Medical Center (NSMC), licensed daycare professional, second grade school teacher, sixth grade school teacher, school guidance counselor, and B.H.'s therapist[13].

25.   From 2005 to 2015, there have been six DCF investigations (2005, 2007, 2011, 2012, 2013 and 2015). Four of the six investigations, from 2011 to 2015 involved Mrs. Ginette Kane Plante and document her contradictory statements regarding Mr. Plante and B.H. In the same ten-year period, there have been over three hundred Essex Probate Court documents filed by and against Thomas Plante regarding his sexual advances, physical abuse and emotional maltreatment of B.H. during visitation. There have also been four full trials (2011, 2013, 2014, and 2015)-all starting after Mr. Plante met Mrs. Kane Plante in September 2010 and began secretly bringing B.H. out of the Commonwealth to stay in New Hampshire.

---

13 Prior to Mr. Plante moving in with Ginette Kane Plante in 2011 and exposing B.H. to a toxic environment with minimal supervision, B.H. had no need to be in therapy.

26.     In the ten years from 2005 to 2015, the DCF defendants have generated documentation of their actions and inactions, providing recognizable patterns of collusion and partnership between DCF and Mr. Plante, and a blatantly aggressive and retaliatory campaign against Ms. Harding for their own self-preservation. For if even one of the investigators had acted in the best interest of B.H., the shortcomings of DCF would have been evident. By sacrificing B.H. to Mr. Plante, the DCF investigators and their supervisors shielded their cruelty from the public eye without fear of retribution.

27.     In fact, between 2005 and 2015, there is evidence DCF actively disregarded Thomas Plante's physical abuse and neglect of B.H., proof of Mr. Plante's abuse of alcohol, and substantiated reports of both Mr. Plante and Mrs Kane Plante's proclivity for deviant sexual acts which places any child at risk in their care. For example, in 2005 Mr. Plante subscribed to an on-line site and during his visitation time he posted naked pictures of his genitals on-line with accompanying message requesting partners. Mr. Plante moved his activity to the personals on Craigslist and continued posting for sexual partners in 2008 and 2009. He was joined by Mrs. Kane Plante shortly after they met in September 2010. Between November 2010 and August 2014, Mr. Plante and Ms. Kane Plante posted nine personal ads on Craigslist requesting bi-sexual/multi-couple for sexual acts in their home. As further evidence of having no concern of DCF, the postings disturbingly align to B.H. visitation and DCF events. For example one was posted the day after Shannon Daignault closed the 2011 investigation titled "GL Bi Couple seeking a fun Bi guy - mw4m", and with confidence DCF would do nothing, another was posted during DCF Lynda Browne's 2013 investigation, titled "GL Couple looking for a Bi Guy - mw4m".

28.   The length of time, ten years, between 2005 and 2015 has generated a plethora of evidence that social workers in the DCF Cape Ann office have actively and purposefully mishandled information, which if handled properly would have provided the court with an accurate assessment of Mr. Plante's destructive and high risk behavior. Mr. Plante's confidence in never receiving a negative DCF report is evident with his publicly posted comments flaunting his excessive drinking and comments of needing to go to "Betty Ford" to recover. DCF was provided with sequentially captured pictures of Mr. Plante which starts with Mr. Plante surrounded by beer bottles with B.H. next to him and ends with Mr. Plante passed out in a lawn chair. They were ignored. As were pictures of Ms. Kane Plante surrounded by beer bottles, with a child on her lap, despite DCF documenting both Mr. Plante and Mrs. Kane Plante claiming she never drank in front of the children.

29.   Not only were concerns over Mr. Plante's alcohol abuse dismissed, but DCF ignored the escalating grooming actions of Thomas Plante from being psychologically and physically abusive to crossing the line and becoming sexually predatory towards B.H. in 2014 as she began to develop and the refusal of DCF to prevent B.H. from being victimized. Mrs. Kane Plante was complicit with Mr. Plante's compulsions, sacrificing her own children without concern.

30.   In 2011, Mr. Plante and Ms. Kane Plane moved into a two-bedroom apartment in Hampton Falls, NH. They had one room set up for the two girls, B.H. and A.M. and one room for them. Thus, Mrs. Kane Plante's young son was forced to sleep in a large closet attached to their room, which had a clear door. The boys' bed faced the bed shared by Mr. Plante and Ms. Kane Plante. It is evident from the Craigslist ads Mrs. Kane Plante

was aware of Mr. Plante's interest in young males and females, yet she allowed her son to be exposed to him on a regular basis.

31.     In 2012, in an act to defend himself from criminal charges of neglect, Mr. Plante admitted to the Newton, NH police that he had secretly taken pictures of the girls during the late night sleepover. Silently standing above them as they moved around in stages of undress. This information is included in the Newton, NH police report and provided to DCF, who ignored the information.

32.     In 2016, despite DCF's fraudulent and unethical actions to protect Mr. Plante, the Essex Probate Court, stating concerns of Mr. Plante being unable to maintain boundaries with B.H. removed all parenting time from Mr. Plante and protected B.H. from being further victimized-despite DCF's actions to sacrifice her. Despite Mr. Plante losing all parenting time for sexually assaulting his own child, Mrs. Kane Plante continued to have A.M. invite her young friends for sleepovers.

33.     The following chronological examples demonstrate the increasing level of abuse and neglect by Mr. Plante and the willful ignorance of DCF to act in the best interest of B.H. instead of Mr. Plante.

34.     Of the four investigations of Thomas Plante (2005, 2011, 2012, and 2015) for neglect, physical abuse and sexual assault, two of them closed early, and despite being provided with court documented evidence of abuse by Mr. Plante, none of these investigations resulted in supported findings. While DCF did document the existence of the pictures, none were in the file provided in response to Ms. Harding's request to John Doyle via her attorney in 2015 for a full copy of the file.

35.   Mr. Plante was first investigated for physical abuse in January of 2005 when allegations

of abuse were reported by the child's pediatrician, a respected mandated reporter, due to

unexplainable bruises on the then twenty-three-month old child. As a result, Mr. Plante

received supervised visitation from the Essex Probate Court[14], this ruling was reversed

after DCF investigator Thomas Mullen, with the approval of supervisor Rena L. Ugol,

closed the case early on January 28, 2005 after only 8 days with a finding of unsupported

despite the fact that all contact between Mr. Mullen and Mr. Plante occurred over the

phone. Mr. Mullen never met with Mr. Plante in person, never visited Mr. Plante's

apartment, and never observed Mr. Plante with B.H. in violation of DCF protocol.

36.   Additionally, Ms. Harding provided the DCF investigator (Mr. Mullen) with court

documents and pictures which are documented in the 51A report generated by DCF, yet

are unexplainably missing from the DCF file. DCF protocol mandates all documentation

provided to ongoing social workers be placed in the case file.

37.   Ms. Harding was intimidated at the outset of this first investigation as Mr. Plante

threatened her and informed her that he had connections and friends inside the

Department of Children and Families and if she reported any of his abusive behavior the

minor child would be taken from her. This threat was documented at the time it was made

and has caused Ms. Harding to continually live in fear of DCF as DCF has taken no

actions which dispel this threat or quell her fears.

38.   Mr. Plante's personal intimate relationship of approximately twenty years with Licensed

Social Worker Christine Dooley Nesbit (LSW#310192) has given him an advantage with

---

14 It was captured in documents of The Probate and Family Court that not only should the physical abuse by Mr. Plante be
supported but that Mr. Plante had put the child in danger by driving with her in an unregistered and uninsured vehicle and that the
child's day care provider was concerned regarding Mr. Plante's aggressive and hostile behavior. Maryann Curtin, Probation
Officer at the Essex Probate and Family Court communicated to DCF that the Court was recommending that the visits between
child and Mr. Plante be terminated pending the results of the DCF investigation.

DCF and has been used to prejudice DCF against Ms. Harding. Prior to the first investigation of Mr. Plante in 2005, Ms. Harding had to seek a restraining order against Ms. Dooley Nesbit to prevent harassment. Based on a substantiated pattern of involvement aligned with each DCF investigation, it appears this personal relationship between Ms. Dooley Nesbit and Mr. Plante has been used to bias DCF in favor of Mr. Plante, resulting in a foregone conclusion of innocence despite substantial evidence to the contrary. This awareness of DCF never supporting any findings against Mr. Plante is evident by the blatant self-publication on social media by both Mr. Plante and Mrs. Kane Plante of their excessive alcohol consumption during each DCF investigation, in stark contrast to the verbiage of Mr. Plante's and Mrs. Kane Plante's interviews documented by each investigator in their report.

39.  Additional collusion in 2005 by Ms. Ugol was documented by DCF three months later, when she again protected Mr. Plante. A 51A filed on April 3, 2005 at 5:35PM, by Dr. Lauren Cheng ("Dr. Cheng"), at the Emergency Room ("ER") of the North Shore Medical Center ("NSMC") due to bruising on B.H.'s forehead and left scapula, was screened out twenty-three minutes later by Ms. Ugol at 5:58PM, who chose to ignore Dr. Cheng's photographs of the bruises.

40.  DCF's failure to support allegations against Mr. Plante and their active disregard for federal and state procedural safeguards tacitly authorized Mr. Plante to continue on a course of wrongful and abusive conduct towards B.H. causing years of pain and trauma which could have been avoided. Despite B.H. not being under the care of DCF, DCF had a duty of care to perform their duties as stated in M.G.L. CHAPTER 119, Section 1.

41. DCF became involved with B.H. and her family again in 2007 when Mr. Plante followed through on his threat to attempt to take the child away from Ms. Harding.

42. In August of 2007, Mr. Plante picked up B.H. for his scheduled visitation time. At this time, Ms. Harding was leaving for mandatory work training and B.H was going to be left in the care of maternal grandmother for a few days. Almost seven hours after Mr. Plante picked up B.H., he brought B.H. to a specific doctor at the North Shore Medical Center (NSMC) Emergency Room and not to her pediatrician despite the fact the pediatrician's office was open and directly across the street from the hospital. Mr. Plante's actions were calculated with the sole purpose of coercing the filing of a false 51A against Ms. Harding to retaliate against her. The supervisor who approved this investigation was Rena Ugol.

43. During the pendency of this investigation there are a number of discrepancies, which DCF actively chose to overlook. These include:

   a. The numerous times Mr. Plante called the investigator, both before and after she had met with B.H., with the sole purpose to complain about Ms. Harding.

   b. The doctor's, Sansei Fowler, ("S.F.") notations regarding the call to DCF and the DCF intake report are drastically different.

   c. The medical report generated by S.F. for an approximately 20-minute session consisted of information furnished by Mr. Plante yet was enough to create a multi-page, multi-paragraph detailed document which appears more as a pre-written report rather than a notation made in a busy emergency department. This doctor is no longer affiliated with the Salem hospitals.

44. In direct comparison to the lack of interest DCF showed when investigating Mr. Plante, this filing was escalated and fast tracked to the District Attorney's office. Ms. Harding

was not properly notified as she was not contacted by phone although DCF was aware she was out of town. Only because Ms. Harding's training was cut short did she discover an ongoing investigation and a critical meeting between the District Attorney, the Salem Police, DCF and B.H. had been coordinated by Mr. Plante in collusion with investigator Kate Hurd. The horror Ms. Harding felt on that day opening the letter and the threat of having her child taken from her haunts her to this day.

45.    Had Ms. Harding not returned home early from her training, the interview of B.H. would have occurred before DCF had an opportunity to speak with her and Mr. Plante would have had additional time to coach the child to lie.

46.    As a result of Mr. Plante's actions, B.H. was brought to the District Attorney's office, placed in a room with a two-way mirror and asked personal questions while a gathering of unknown adults watched her behind a two-way mirror. Mr. Plante was allowed to be present and was given the ability to attempt to influence the District Attorney, the police, and DCF while Ms. Harding was forced to wait outside all the while not knowing what was happening and if her daughter was okay.

47.    During this interview, the interviewer asked B.H. about the allegations and was told by B.H. "My Dad told me". The interview stopped after that, and allegations against Ms. Harding were not supported.

48.    At the conclusion of this traumatic situation B. H. was returned to her mother without any explanation. But the fear of what Mr. Plante could orchestrate with the allegiance of DCF has had a profound effect on Ms. Harding's life.

49.    Further, upon the conclusion of the investigation, Mr. Plante wrote a letter to DCF claiming he was given "bad advice" and should not have filed.

50.   Despite the documented admittance by Mr. Plante that this investigation was fraudulent, the record was never corrected and continues to be referenced to defame Ms. Harding's character.

51.   During the course of the 2007 investigation, serious concerns were raised about Mr. Plante. These concerns included Mr. Plante sleeping naked in the same bed as B.H. and his then girlfriend, Alysia Mock, and bringing the minor child to bars while intoxicated.

52.   These neglectful and abusive behaviors were never made subject of an investigation and DCF exhibited deliberate indifference towards these pressing safety concerns.

53.   On July 3, 2008 Ms. Harding was hospitalized at Brigham and Women's Hospital with stage IV cancer of the appendix which had spread to her internal organs, and stage II cancer of the colon.

54.   Saving Ms. Harding's life required the emergency removal of nine internal organs; and twelve aggressive sessions of chemotherapy. Ms. Harding was out of work on disability from 2008 to 2010 and B.H. maternal grandmother helped to care for the child during this time.

55.   Mr. Plante, instead of using this time with the child-as he claims in multiple DCF interviews has been denied to him-left for trips to Italy and Ireland with his then live-in girlfriend Samantha Welch.

56.   Mr. Plante chose to use his then position in 2008 as a radiology technician for Brigham and Women's Hospital ("BWH") to break into Ms. Harding's medical records. This was the second time he had abused his level of access and broke into Ms. Harding's records. It appears the first time was as a security guard working for Mass General Hospital where fraudulently used her license plate number with the excuse of checking a random plate to

access personal information which he used to gain deeper system access. This information was provided to DCF as an example of Mr. Plante's character and ability to cross ethical boundaries, but was ignored.

57. In 2009 Ms. Harding, unable to work and on disability as a result of aggressive chemotherapy, filed a modification in Essex Probate and Family Court to increase Mr. Plante's child support obligation which had been Sixty-Five Dollar per week since 2005 to a more reasonable sum as he was working multiple jobs which angered Mr. Plante[15].

58. Through this litigation, Ms. Harding discovered Mr. Plante was emotionally maltreating the child and instructing B.H. to keep important information from Ms. Harding by stating B.H. could lose her mother if she got her upset. Fear of losing her Mother is a theme Mr. Plante has used consistently to manipulate the child and cause further psychological trauma. Mr. Plante continued throughout the years to emotionally abuse B.H. with the constant reminder of cancer to manipulate her actions. As evident in 2011 documentation referencing Mr. Plante's claim to B.H. that her beloved pet was dying of cancer, and forcing the child to watch the pet suffer instead of taking it to a veterinarian.

59. Shortly after Ms. Harding' filed the 2009 modification, Mr., B.H. started to return home after visits with Mr. Plante with injuries such as burns on her arms and contusions to her head[16].

60. Ms. Harding, weakened by the chemotherapy treatments, and unable to obtain explanations from Mr. Plante contacted DCF and asked for their assistance. Rena Ugol was the supervisor who chose to not pursue the case-despite medical records and pictures

---

15 Throughout the past ten years, a pattern has developed. During the course of any litigation, Mr. Plante would deliberately cause harm to B.H. The purpose of these tactics is to divert Ms. Harding's attention from the matter at hand to focus on the needs of her innocent child.

16 Mr. Plante failed to seek medical assistance of B.H. was a result of these injuries and had no plausible explanation for the cause of these injuries

of the injuries. Instead Ms. Ugol decided this was a problem between Ms. Harding and

Mr. Plante and they dismissed the physical abuse of B.H.

61.     In September 2010, Mr. Plante began taking the child secretly out of state to stay with

Ms. Kane Plante (then Ginette Kane Murphy) in her ex-husband's home in Hampton

New Hampshire. Mr. Plante forced the child to lie about her location-a pattern he has

repeated during all of the child's life.  Mr. Plante preyed on the child, acting as if they

were co-conspirators, making the child believe he trusted her with something important

and forcing her to keep secrets from the adults around her.

62.     In September 2010 the child developed a severe rash on her right arm which did not

respond to regular antibiotics. Mr. Plante claimed nothing had changed and when

questioned by Ms. Harding about pets, lied and stated there were no animals around the

child and pets were not allowed in his apartment building. The rash would improve, then

worsen after each visitation Mr. Plante manipulated B.H. to believe the travel to NH was

"their secret", and encouraged B.H. to not tell Ms. Harding to not get her upset. Ms.

Harding scheduled multiple appointments with the pediatrician and dermatologist, yet

they were thwarted in their attempts to help due to the lies of Mr. Plante. Both Mr. Plante

and Mrs. Kane Plante knowingly allowed B.H. to endure months of having the skin on

her arm and hand peel off, in addition to teasing by her school mates and having to wear

special gloves at night.

63.     In December 2010 Mr. Plante and Ms. Kane Plante left for a three-week vacation

overseas; only when the child was not subjected to the manipulations of Mr. Plante did

she finally tell Ms. Harding about the outdoor cat owned by Ms. Kane Plante and B.H.

was forced to sleep on the floor in Ms. Kane Plante's daughter's room on a dirty mattress

used by the cat.  With this information about the cat, the dermatologist was able to prescribe the right antibiotics and the rash was gone. Neither Mr. Plante nor Ms. Kane Plante showed any compassion for the child and only sought to protect themselves by not sharing vital information with Ms. Harding.

64.   In 2011, six months after meeting and eight months after his previous girlfriend moved out, Mr. Plante moved in with Ms. Kane Plante and her children to the first of three different locations in New Hampshire (Hampton, Hampton Falls and Newton)-each one farther away from B.H.

   a.   Ms. Kane Plante has two older children from two previous marriages but was not granted sole physical custody, each child has had a different visitation plan with their mother yet Mr. Plante has been unable to describe the arrangement to the court, refusing to act in B.H. best interest.

   b.   Ms. Kane Plante altered visitation time with her daughter-two years older and two grades higher than B.H.- to match B.H.'s visitation time with Mr. Plante. This reduced each of their parenting time and forced the girls to babysit each other.

65.   Since Mr. Plante moved in with Ms. Kane Plante in 2011, the toxic environment they have created of violence and exposure to graphic sexual images has resulted in four Probate Court trials (2011, 2013, 2014 and 2015) and five DCF Investigations (2011, 2012, 2013, 2014 and 2015). It has been a consistent pattern of Mr. Plante that as litigation increased, and court orders were not favorable to Mr. Plante, B.H. was hurt while in Mr. Plante's care. Each time the abuse was reported by a mandated reporter, and each time, DCF failed to protect the child.

66.     In February 2011, shortly after Ms. Harding was able to return to work, Mr. Plante filed a

        modification stating B.H. wished to spend more time with him and that he wanted to

        claim the minor child on his taxes.

67.     On May 31, 2011, the same pediatrician who filed in 2005, filed another 51A because of

        bruising on B.H. caused by Mr. Plante and concern over exposure to sexual content.

68.     Somehow, DCF misplaced the fax from the pediatrician voicing these concerns.

69.     DCF's careless, reckless, or deliberate mishandling of this fax resulted in direct harm to

        Ms. Harding as the Essex Probate and Family Court were unable to corroborate her

        truthful statements to the court thus casting an unnecessary shadow of doubt on her

        testimony and limiting her ability to protect her child.

70.     The next day, June 1, 2011 another 51A was filed, this time by B.H.'s second grade

        teacher for physical abuse by Mr. Plante. During this investigation more unsettling

        concerns of a sexual nature were disclosed to DCF. These concerns which were

        expressed by Ms. Harding, B.H.'s teacher, pediatrician, and therapist were that B.H. was

        exposed to graphic online pornography by the older children of Ginette Kane Plante

        during Mr. Plante's visitation, and that B.H. and other children were repeatedly exposed

        to "s" (sex) noises while in Plante's home which scared them.

71.     Glaringly, in 2011, of the four 51As' filed by mandated reporters against Mr. Thomas

        Plante, one was lost (filed by B.H.'s pediatrician), one (#3142326) was falsified by Lyn

        Mello and Lynda Browne (a certified daycare professional and mandated reporter was

        listed as a "babysitter"), and one was refused (filed by the school guidance counselor)

        and never logged into the system which was in direct violation of M.G.L. 110 CMR 4.20

        (3), (4) and 110 CMR 3.02. The 51A (#3142326) filed by the daycare professional was

unsupported by DCF supervisor Lyn Mello, on June 1, 2011 at 1:56 PM due to "lack of protective concerns", however on the same day, twenty-six minutes earlier at 1:30PM the fourth 51A, from B.H.'s second grade teacher was filed, with the support of the school principal, with concerns of physical abuse and exposure to graphic sexual images, was screened in for investigation.

72.   Despite consistent reporting by the child, medical reports to support the allegations, and pictures of physical injuries not one allegation of physical abuse by Plante was supported and DCF continued in their pattern of deliberate indifference.

73.   From the June 1, 2011 filing, it took two days for DCF to take action and initiate the investigation-(#3143772). It appears the delay was caused by Lyn Mello as she is the only approver listed on June 3, 2011 at 10:36AM.  Four different reporters filed within fifteen days, but only one report was supported for initial assessment. In retrospect it is not surprising DCF did not support a finding against Mr. Plante as they did everything possible to prevent an investigation in the first place. It was because of the abysmal failure on the part of investigator Shannon Daignault to truthfully document her interviews with collateral witnesses, and her planting a seed of the child being coached and not truthful, combined with Lyn Mello and Rena Ugol's negative influence which prompted Ms. Harding to file against these social workers and Mr. Plante' long term ex-girlfriend Christine Dooley Nesbit in March 2012 with the DPL. An act which they made Ms. Harding pay dearly for in 2013 when they tried to take her child in retaliation.

74.   Between March and June 2012, Ms. Harding filed complaints of regulatory violations with the DPL against Christine Dooley Nesbit, Rena L. Ugol, Shannon K. Daignault and Lyn Mello for actions which failed to protect her child and resulted in a ruling by the

Probate Court in 2011 using information mishandled by DCF which resulted in B.H. being forced to spend more time with her abusers Mr. Plante and Mrs. Ginette Kane Plante and resulted in an increase in physical and emotional injuries[17]. The DPL board met privately on July 24, 2012, and notified Ms. Harding in August 2012, they had voted to dismiss the complaints and advising Ms. Harding she could pursue further action with the Ombudsmen's office.

75.     In response to the increased physical and emotional injuries received by B.H. with the increased visitation time with Mr. Plante and Mrs. Kane Plante, Ms. Harding continued to deplete her financial resources to ask the court for help.

76.     On September 11, 2012 Ms. Harding's attorney sent a letter to the DPL requesting copies of the DPL investigator's records. The request was denied[18] on September 20, 2012-in violation of Ms. Harding's rights under M.G.L. as the complainant.[19]

77.     Three weeks later, on October 12, 2012, Ms. Harding's daughter, B.H. was brutally attacked during visitation with her father, and all other concerns by Ms. Harding, including Ms. Harding's health, were pushed aside.

78.     On October 2012, B.H was severely injured while in the care of Thomas Plante and Ginette Kane Plante during a slumber party. In attendance were Mrs. Kane Plante's daughter, A.M., and four of her friends (T.N., M.M., E.A., and M.K.) who B.H. had never met. With no provocation, Mrs. Kane Plante's daughter A.M., and her older friends started physically attacking B.H. attempting to put sleeping bag over her head and hitting

---

[17] (SEE EXHIBIT A- COMPLAINTS TO DPL)

[18] It was not until 2016, when Ms. Harding was able to obtain the records. It was discovered Ms. Dooley Nesbit was provided with the 2011 trial rationale to defame Ms. Harding, as she positioned it as a reason to dismiss the complaint. It is the usage of this non-public document by Ms. Dooley Nesbit which further supports the claim she exerted undue influence to protect Mr. Plante.

[19]  258 CMR 30.02 (4)b Investigation of Complaints

and kicking her. The injuries to B.H. were extensive, in addition to a black eye; B.H sustained multiple contusions all over her body.

79.   Mr. Plante and Mrs. Kane Plante recklessly permitted the attack by ignoring B.H.'s screams for help, forcing her to defend herself against the brutality of four bigger and older girls. Despite the obvious pain from her injuries, the possibility of internal injuries, and the deepening of the black eye, Mr. Plante and Mrs. Kane denied B.H. medical treatment for three days until she was returned home to Ms. Harding and Ms. Harding immediately sought out medical attention.

80.   The North Shore Medical Center (NSMC) emergency department filed a 51A which resulted in a shoddy investigation by DCF. The investigator was LSWA Sidumile Mahlatini.

81.   Ms. Mahlatini[20] never viewed the images of B.H. captured by the Chief of Pediatrics[21] and never went to Mr. Plante's home in Newton NH where the incident occurred. In direct contrast, in 2013 Lynda Browne and in 2015 Maria Delany went to the Newton, NH location.

82.   During the 2012 investigation B.H. disclosed to Ms. Mahlatini this was not the first time she had been beaten by A.M. and that Mr. Plante consistently failed to assist her[22]. She further disclosed Mr. Plante's alcohol use and his actions afterwards made her feel unsafe

---

20 LSWA#414249

21 There were approximately nineteen different pictures taken of B.H.'s injuries by the well-respected and experienced Head of Pediatrics, Dr. Edward Bailey that DCF failed to consider.

22 On April 29, 2012: A.M. attacked B.H. with a lacrosse stick causing defensive injuries on B.H.'s forearms and a severe bruise on B.H.'s midsection noted in the pediatric record as "ovoid and 4cm in size. On May 26, 2012 A.M. pushed B.H. into a playground structure noted in the pediatric record as a "15cm long, 2-3 cm wide linear bruise" on her mid-section. Thomas Plante claimed he and Ginette Kane Plante were sitting in the car with the windows closed and did not see or hear anything.  After Brianna told them what happened, they did nothing to treat the injury for two days or notify Ms. Harding of the injury. B.H. returned home nauseous and in pain, Ms. Harding took her to the pediatrician on May 29, 2012.

in the home. Ms. Harding provided Ms. Mahlatini with medical records documenting B.H.'s injuries at the hands of A.M., but they were disregarded.

83. Mrs. Kane Plante's daughter, A.M., had exhibited violent behavior against B.H. since 2011. As a result of the increased brutality of the 2012 incident combined with the previous attacks by A.M., in February 2013 the Probate and Family Court (J. Abber) found Mr. Plante and Mrs. Kane Plante to be neglectful in their inactions and deliberate disregard for the well-being of B.H. Further, the court ordered the Mrs. Kane Plante's daughter A.M. was not to be around B.H. without supervision. While this order remains in full force and effect, it has been consistently violated by Mr. Plante and Ms. Kane resulting in further harm to B.H.

84. Had DCF investigated properly, they would have found that B.H was clearly a victim of repeated physical and emotional abuse and neglect by both Mr. Plante and Mrs. Kane Plante and substantiated a finding of neglect which would have prevented further harm to B.H. by either Mr. Plante or Mrs. Kane Plante.

85. In April 2013, as retaliation for the February 2013 decision of the honorable Judge Jeffery Abber, Mr. Plante, true to his pattern, and with the collusion of both DCF and the St. John's School nurse, Eileen Braley ("Mrs. Braley") attempted to destroy the lives of and relationship between Ms. Harding and her daughter, B.H.

86. DCF has been vocal in their complaints about increased workloads and few social workers. However, in 2013, instead of focusing their limited resources where needed and taking the numerous allegations against Mr. Plante seriously to protect B.H. from Mr. Plante's abuse, DCF conducted a "witch hunt" against Ms. Harding. In 2013, DCF received a false report against Ms. Harding on April 24, 2013 by Mrs. Braley, then the

school nurse at B.H.'s school, who claimed she had the support of B.H.'s therapist Dr.

Mary Baures. This was a lie. Unknown to Mrs. Braley, April 24, 2013 was the same day

B.H. had a therapy appointment. Dr. Baures never filed because she had no concerns of

Ms. Harding. DCF intake worker Aida A. Vargas[23], working with an expired LSWA

license, waited three full business days, then called Dr. Baures at 3:40PM and 4:05PM on

April 29, 2013. Three minutes later the 51A was screened in at 4:08PM and approved by

Lori L. Bolduc. Katherine Hurd was assigned to investigate, Ms. Hurd was the same

social worker assigned against Ms. Harding from the false 51A generated by Mr. Plante

in 2007 and to whom Mr. Plante admitted to providing false information to in a letter

written in 2007.

87.     Kate Hurd, based on her past interactions with Mr. Plante, proof of his deceit, and after

speaking with Ms. Harding, should have questioned the nurse's credibility, her

involvement with Mr. Plante, and Mrs. Braley's true motive.  In fact, B.H. was actively

being bullied by the nurse's granddaughter a situation which Ms. Harding had addressed

with the school principal earlier in the year which had angered Mrs. Braley.

88.     Many of the nurse's actions during this prolonged investigation show a heightened

scrutiny and personal interest - which should have alerted Kate Hurd and her co-

investigator Rena Ugol of misconduct. These actions include: the fact Mrs. Braley was

outwardly frustrated B.H. was not removed from Ms. Harding's home and subsequently

the school, and never placed in foster care as a result of her report. This is evident by her

calling DCF more than 20 times during the initial assessment to heighten focus; the fact

Mrs. Braley met with B.H. before her DCF interview at the school to help her

"remember" and actually sat in on part of B.H.'s interview at the school; the fact Mrs.

---

23 LSWA#410251

Braley removed B.H. from class 40-50 times for private talks in her nurse's office away

from other adults; and the fact the nurse had frequent and increased interaction with Mr.

Plante for the only time in five years since B.H. had been enrolled at the school.

89.     Despite this information as well as the fact B.H. had been seen by two different doctors-

her long term pediatrician for a sore throat and her allergist (neither of whom noted any

concern)- in the same week as the allegation against Ms. Harding, DCF pursued a course

of action which resulted in the case being open for eighteen months from the initial

report, and six months from the dismissal with prejudice due to the absence of any

evidence in the Essex Probate Court in February 2014. It is evident DCF extended the

time of the investigation merely to cause distress to Ms. Harding and B.H, because within

this long and unnecessarily drawn out eighteen months, no actions were taken by DCF to

remove B.H. from her home, no collateral witnesses were contacted, and no services

were provided. Instead, Lynda Browne, Rena Ugol, Mary Doherty, Pamela Gray and

John Doyle placed B.H in further harm by extending the investigation and knowingly

delaying the Court action which hinged on the results of the investigation. This

intentional delay interfered with Ms. Harding's parenting time, caused undue stress and

emotional trauma and provided more opportunities for harm to B.H. because of her

additional time spent with Mr. Plante despite the numerous documented concerns of Ms.

Harding.

90.     The DCF investigation and the conduct by Eileen Braley in her role as the school nurse

put B.H in a constant state of anxiety and caused her grades to drop. Children have an

absolute interest in freedom from abusive or neglectful behavior. B.H. was never

afforded this freedom by DCF or the DCF Defendants. Instead, she was subject to an

extended, eighteen month-long-investigation, during which she was repeatedly subject to ridicule, threats, and abuse, not just from Defendants Mr. Plante and Mrs. Kane Plante, but from the DCF Defendants as well. For example, Lynda Browne herself documented witnessing and ignoring verbal abuse by Mr. Plante to B.H. The DCF Defendants owed B.H. a duty to protect her from these actions and failed to do so.

91.    In secret, after Lynda Browne testified of no concern in the February 2014 trial and after the accusations were dismissed due to absence of any evidence, Lynda Browne created a second service plan without notifying Ms. Harding or her attorney, and added stipulations which Ms. Harding was assigned to follow-but never made aware of and therefore was unable to comply with, thereby violating her interest in the care and protection of her child.

92.    Lynda Browne expressed in her notes her displeasure of Ms. Harding having attorneys, and took advantage of Ms. Harding's recuperation of her second reoccurrence of cancer in December of 2013 to bypass Ms. Harding's attorney and contact her directly so she could "quickly stop by". Ms. Browne also failed to provide Ms. Harding with copies of the first "service plan", which Ms. Browne had delivered and discussed with Mr. Plante at least a month before Ms. Harding learned of the document. In fact, Ms. Browne failed to include in the DCF file the two letters from Ms. Harding's attorney questioning her actions and requesting a status on the case. Additionally, neither the judgment of neglect from February 2013 against Mr. Plante and Ms. Kane Plante nor the outcome of the February 2014 trial where the charges were dismissed were included in the file although they were provided to Lynda Browne.

93.    During the prolonged investigation, Lynda Browne often cancelled meetings with Ms.

Harding, then wrote in her reports that Ms. Harding either cancelled or refused to meet.

Instead Ms. Browne traveled outside of the Commonwealth to Newton, NH to meet with

Mr. Plante on a frequent basis. Ms. Browne violated the boundaries of Massachusetts and

performed her duties as a social worker out of state in NH without having a NH social

worker license. Mr. Plante would not tell B.H. until she was in the car on the way to N.H.

about the surprise meetings with Ms. Browne, leaving B.H. in a continual state of anxiety

during each visit with Mr. Plante. During each secret meeting outside of the boundaries

of the Commonwealth, Mr. Plante would remain in the room with B.H. and Lynda

Browne, attempting to manipulate B.H. Mr. Plante would then verbally reprimand B.H.

when she refused to lie about Ms. Harding.  This mental abuse of having two adults

berate B.H. about her mother continued for 18 months, took an emotional tool on the

child, and only ended when a new DCF supervisor was given the case. Lynda Browne's

own notes document her continued attempts to falsify information about Ms. Harding to

keep the case open, but the supervisor requested it be closed. Even to the end, Lynda

Browne attempted to keep the case open, setting up a final covert meeting after hours at

the DCF Cape Anne office. After Mr. Plante picked up B.H. for a Wednesday dinner visit

he took her directly to the Cape Ann office without notice, let Lynda Brown belittle and

harass B.H. trying to manipulate her into saying anything which she could use to continue

in her prosecution of Ms. Harding. B.H. returned home to Ms. Harding shaking and

crying from the trauma of this event. DCF, by and through the malicious actions of

Lynda Browne had themselves become the abuser of B.H. She was finally forced to close

the case on August 15, 2014 a full 6 months after the case was disposed of in the Probate and Family Court due to an utter lack of evidence.

94.  In June of 2014, in an attempt to force B.H. to lie to Ms. Browne and keep the case open, both Mr. Plante and Mrs. Kane Plante psychologically abused B.H. by inviting the same girls who attacked B.H. on October 12, 2012 for another sleepover during B.H.'s visitation and told B.H. about it a week before so she would continue to worry and be afraid. When B.H. told Ms. Harding, Ms. Harding pleaded with Mr. Plante to have it on a weekend when the child was not there. Spitefully, Mr. Plante refused to change the date and instead e-mailed Ms. Harding sickeningly claiming B.H. "…really wanted to be there..". During the event Mr. Plante took the phone away from the child so she could not call Ms. Harding. The child was traumatized, and sat up most of the night in fear they were going to hurt her. The next morning, Mr. Plante left for the day to go golfing, and left B.H. there to suffer at the hands of the girls who ridiculed her in the presence of Mrs. Kane Plante. Mr. Plante abandoned B.H. with no regard for her safety or emotional stability. When B.H. returned home to Ms. Harding she suffered weeks of nightmares about the attack and would only sleep with the lights on. Ms. Browne ignored the information about the sleepover and the effect on B.H. afterwards.

95.  Unrestricted, and given implied approval by Lynda Browne, Mr. Plante and Mrs. Kane Plante then invited a group of young teenage boys for a sleepover during B.H.'s visitation time and did not tell B.H. about the event until she was there-and after Mr. Plante had taken her phone. As Mr. Plante began to drink, again, B.H. hid in her room afraid of what Mr. Plante would do next, and did not sleep. In September of 2012, before the abuse of October 12, 2012 happened, Ms. Harding's attorney communicated to Mr. Plante about

her concern of having random teenage boys sleep over during B.H.'s visitation. As Mrs. Kane Plante's son was only there part time, and had a flexible visitation schedule with his mother, there was no need to have them at the same time as B.H.'s visitation. Mr. Plante, instead of showing any concern for B.H., questioned if this included having his "male friends sleep over". This response is especially disturbing in view of Mr. Plante and Mrs. Kane Plante's active posting on Craigslist for unknown sexual partners. This information was given to Ms. Browne, not only did she ignore it, but she took the position the abuse on October 12, 2012 did not occur.

96.   The 2013 investigation was started by a retaliatory act of resentment harbored by the school nurse towards Ms. Harding for reporting the nurse's granddaughter's bullying to the school and continued due to retaliation by supervisor Rena Ugol and Lyn Mello who Ms. Harding had filed complaints against for multiple violations of 110 CMR. A complete review of the Eileen Braley's manually written nursing records show that in the prior five (5) years the child had attended school, no negative comments about Ms. Harding were noted. However, there were references in the notes to B.H.'s fear of her father and the toxic sexual environment in New Hampshire which Eileen Braley documented and actively ignored. All of this information was provided to Lynda Browne, however, she refused to contact the school or take this information into account during the course of her investigation.

97.   DCF has never supported any findings against Ms. Harding and there has been no document which states any support of findings. Yet in January 2015, instead of investigating Mr. Plante for the sexual assault of then twelve-year-old B.H. Maria Delaney working with Rena L. Ugol-who should have been removed from the case-took

it upon herself to claim the investigation was "substantiated" and provided this defamatory accusation to the Essex and Probate Court. The judge, believing DCF, included this in a court document causing additional heartache, financial distress and damage to Ms. Harding's reputation.

98.    The only time "substantiated" appears in the 51A document (3426601) is in Rena Ugol's biased comments about Ms. Harding. The same document where Ms. Ugol notes the well-used "risk assessment tool" generated a low risk assessment, but Ms. Ugol decided to manually over ride it and change it to "moderate" in apparent retaliation for the complaint Ms. Harding filed against her with the DPL months earlier.

99.    Prior to reading the Court document by Judge Giordano, Ms. Harding had no awareness this was in any report; she was never made aware of this fact nor was she provided with any avenue to correct this record as there were no supported findings against Ms. Harding. This false "substantiated" record was made public by Mr. Plante and is a permanent piece of the court record. This finding is detrimental to Ms. Harding's reputation and she should have been given the opportunity to questions it validity. The absence of any such procedure is a violation of her due process rights.

100.   Lynda Browne did not protect B.H., and instead she provided the excuse for Mr. Plante to escalate his sexual fantasies into reality by telling him B.H. would probably falsely accuse him of sexually assaulting her. In 2015, Mr. Plante used this information and stated to the Probate Court, since Ms. Browne had already told him this would happen, and it did happen, then it was obvious B.H. was lying.

101.   In January 2015 DCF became involved with B.H and her family as a result of Thomas Plante's escalating aggressive sexual behavior. Starting with the exposure to graphic

pornographic on-line sites in 2011, Mr. Plante and Mrs. Kane Plante had been grooming
B.H. with repeated exposure to sexual situations and down playing B.H.'s concerns of
inappropriate touching by Mr. Plante. Mrs. Kane Plante was aware Mr. Plante would go
into the child's room at night and sit on her bed after a night of drinking and  discuss
adult topics with her such as his vasectomy and complain about his sexual relationship
with Mrs. Kane Plante.

102.    In 2014, when B.H. turned 12, Mr. Plante started going into B.H.'s room while she was
changing and refused to leave. Mr. Plante told her it was not what she thought and that he
was her father and it was okay. He also told B.H. that no one would believe her because
after all, she had lied about her mother.  B.H. started getting changed in the bathroom
which had a lock in order to protect herself. Mrs. Kane Plante was in the house and was
aware of Mr. Plante's predatory actions, and refused to stop it. In December 2014 Mr.
Plante sexually assaulted B.H.

103.    B.H. reported to Ms. Harding an incident occurred during Christmas visitation at Mr.
Plante's home between late night on December 25, 2014 and early morning of December
26, 2014. During a Christmas party for Ms. Kane Plante's family at his home. While
everyone else wore appropriate winter garments Mr. Plante told B.H. to wear a thin
summer dress purchased for her in May of 2014 which was now too short and too tight
on her. Mrs. Kane Plante did nothing to help the child cover herself. Mr. Plante became
intoxicated during the Christmas party and continued drinking after everyone left, while
Ms. Kane Plante, B.H. and Ms. Kane Plante's daughter A.M. were cleaning up. When
B.H. and A.M. were bent over an ottoman looking under the coach, Mr. Plante silently
creeped up on B.H. from behind and purposefully and without warning lifted her skirt

above her waist, an overt sexual act which caused her to be exposed.  B.H. immediately jumped up and cried out in embarrassment and fear of Mr. Plante. Mrs. Kane Plante saw the event but did nothing and both individuals purposefully misled DCF throughout the course of the investigation.

104.    B.H also reported Mr. Plante would come into her room while she was changing, refusing to leave when asked, and purposefully watching B.H as she undressed. B.H. painfully shared the story with Ms. Harding starting with the cryptic, "He doesn't close his eyes." B.H. struggled because she knew it was not right but Mr. Plante would manipulate B.H. stating he was not doing anything wrong.

105.    Mrs. Kane Plante failed to come to B.H.'s aid after the incident occurred and instead both Mr. Plante and Mrs. Kane Plante attempted to manipulate B.H. over the phone with promises of a puppy and then threats when B.H. refused to back down.

106.    In the days and months after the incident B.H. consistently reiterated these same facts multiple times to multiple people and expressed confusion and legitimate safety concerns about Mr. Plante. Had these allegations been made against a stranger that individual would have been arrested and prosecuted.

107.    Ms. Harding contacted the Newton New Hampshire Police Department who in turn contacted the Cape Ann Area DCF Office located in Salem Massachusetts. Social Worker Maria Delaney was assigned to investigate the matter. Throughout the course of the ten-day investigation additional 51A's were reported to DCF surrounding this incident by B.H.'s therapist and sixth grade teacher with support from the school principal. Despite B.H.'s consistent and credible reporting of sexual assault-defined by Massachusetts law as any type of sexual contact or behavior that occurs without the

explicit consent of the recipient- DCF purposefully failed to protect B.H. by choosing to not support a finding of abuse against Mr. Plante.

108. Maria Delaney, representing DCF did exactly what Mr. Plante had predicted, she implied B.H. was lying and protected Mr. Plante.

109. Maria Delaney testified to the court the allegations were unsupported because the conduct reported did not rise to the level of sexual abuse. This however is inaccurate. Abuse is defined as the non-accidental commission of any act by a caretaker upon a child under age 18 which causes, or creates a substantial risk of physical or emotional injury, or constitutes a sexual offense under the laws of the Commonwealth or any sexual contact between a caretaker and a child under the care of that individual. The actions described by B.H. as perpetrated by Plante certainly fall within DCF's own definition of abuse.

110. Further, Sexual assault is any sexual activity that is forced, coerced, or unwanted. The conduct of Mr. Plante against B.H. is incorporated into this definition.

111. Furthermore, neglect is defined as failure by a caretaker, either deliberately or through negligence or inability, to take those actions necessary to provide a child with minimally adequate food, clothing, shelter, medical care, supervision, emotional stability and growth, or other essential care. The actions and inactions for both Mr. Plante and Mrs. Kane Plante fall within this definition.

112. In 2016, as a result of a trial in Probate and Family Court centered on the sexual assault in December 2014 and the ensuing trauma caused to B.H., Mr. Plante's parenting time with B.H. was completely terminated. The Honorable Judge Frances M. Giordano

listened to B.H. and removed all parenting time from Mr. Plante, including in her concerns that "Father appears to have difficulty maintaining boundaries with[24]" B.H.

113.    After ten years a governmental agency finally acted in the best interest of the child.

114.    Ms. Harding, during each DCF investigation of Mr. Plante, tried desperately to advise the social workers employed by DCF that B.H was not safe in Mr. Plante's care. Instead of action, DCF forced Ms. Harding to continue to allow contact between Mr. Plante and B.H by not supporting any findings against him.

115.    The following actions are consistent with DCF's definition of neglect and abuse yet DCF never supported a finding against Mr. Plante. DCF's failure to act suggests that DCF authorizes these actions.

116.    Throughout B.H.'s young life, Ms. Harding and numerous mandated reporters have informed DCF that Mr. Plante has failed to provide a safe and nurturing environment for B.H. during his parenting time. His inappropriate behavior with B.H. threatened the child's health, safety and wellbeing and caused long term emotional trauma as described in the following examples:

    a.  Mr. Plante regularly abuses alcohol in child's presence which upsets and endangers the child.

    b.  On numerous occasions, Mr. Plante has driven while intoxicated with the child in the car.

    c.  For a span of over two years Mr. Plante kept B.H.-as well as the two children of Mrs. Kane Plante-in the back seat of an unregistered and uninsured car with missing rear inside door handles. This safety violation placed the children in extreme danger, if an accident were to occur the children would not have been able to vacate the vehicle.

---

24 Judge Theresa Giordano's comment from Probate Court Document dated 6-20-2016

Neither Mr. Plante nor Mrs. Kane Plante showed any concern by placing their children in danger as they took no move to correct the easily remedied situation.

d.  Mr. Plante has failed to properly supervise and look after B.H. while she is in his care resulting in numerous avoidable injuries by Mr. Plante and at the hands of Mrs. Kane Plante's daughter A.M. despite a court order preventing A.M from being alone with B.H. to protect B.H.

e.  Mr. Plante has actively tried to isolate the child while in his care, and failed to foster any social connections for the child in either Massachusetts or New Hampshire outside Mrs. Kane Plante's immediate family. Instead he has attempted to disrupt the relationship between mother and child by not allowing child to contact mother while in his care.

f.  Mr. Plante has failed to properly feed and clothe the child (i.e. no winter jacket and pants in January or a summer dress in December) during his parenting time; Mrs. Kane Plante would force the child to put on the same dirty clothes she was picked up in from school on Friday by Mr. Plante before Mr. Plante dropped B.H. at her home in Salem on Sunday night.

117.  Since visitations started, throughout B.H.'s life, Mr. Plante has neglected B.H.'s medical care; failing to notify/inform Ms. Harding of issues involving B.H.'s health which occurred during visitation, instead attempted to conceal her injuries by not immediately seeking appropriate medical attention. In fact, Mr. Plante has never sought medical attention for B.H. without Ms. Harding's active involvement. Mrs. Kane Plante refused to provide medical care to B.H. after her daughter A.M. physically assaulted her. Medical neglect is supported by the following examples:

a.  As an infant B.H. suffered from severe and painful diaper rash as a result of Mr.
Plante's failure to properly care for her during his parenting time. Mr. Plante chose to
let B.H. cry in pain and let her sit in a wet diaper, refusing to seek medical attention
as the rash got worse. Ms. Harding immediately brought the child to her pediatrician
upon discovering the rash due to its. This was captured and ignored by DCF in
Thomas Mullen's 2005 investigation.

b.  On January 11,2009 while B.H was in Mr. Plante's care, he allowed then six-year-old
B.H. to play on a treadmill unsupervised as he watched a football game. As a result,
B.H. fell and smashed her head on the floor.  Mr. Plante failed to seek immediate
medical attention despite an obvious contusion on her head. Instead he waited two
hours so he would not be out his "paid for time"[25], and returned B.H. home
complaining of pain in her head and refused to answer any questions. Ms. Harding,
with her immune system weakened by chemotherapy, immediately sought medical
attention for the child and took her child to the children's ER at NSMC to ensure she
was safe.

c.  On May 15, 2010, Mr. Plante brought B.H. to an amusement park during his
visitation and negligently put the child on a ride he wanted to go on but was not
appropriate for B.H.'s age and height. As a result, B.H. suffered severe whiplash
which resulted in the filing of an incident report at the park. Despite the fact B.H. was
lethargic, vomiting and complaining of substantial pain Mr. Plante failed to obtain
medical attention. Instead he kept her in the car for four hours until he dropped her
off at Ms. Harding's and complained about the vomit in his car. Ms. Harding

---

[25] Mr. Plante's term for his parenting time due to the fact that he is forced to pay child support

immediately sought medical attention and coordinated follow-up care with the chiropractor.

d. On numerous occasions B.H. was harmed at the hands of Mrs. Kane Plante's daughter, A.M., despite the knowledge this was occurring and a Probate Court order that did not allow A.M. and B.H. to be alone together, Mr. Plante and Mrs. Kane-Plante continued to fail in supervising while B.H was in their home and failed to seek medical attention for any of the injuries that resulted. The injuries which resulted from this failure to supervise include the following:

  i. On October 12, 2012, B.H. was attacked by the A.M. and three friends. She sustained a black eye and contusions and bruises to her entire body. These injuries were so concerning that when Mother was finally able to seek medical attention for the child 3 days after the incident the Chief of Pediatrics was called in, and he felt it necessary to photograph the injuries and file a 51A with DCF.

  ii. On April 30, 2012, Mr. Plante failed to seek medical attention for B.H. when A.M beat B.H with a lacrosse stick on her arms, legs, and midsection.

  iii. On May 29, 2012, Mr. Plante failed to seek medical attention for B.H. when A.M. forcefully pushed B.H. into a playground structure resulting in a large contusion which causing possible internal injury.

e. B.H. sustained many unexplainable bruises and injuries during Mr. Plante's parenting time which were not consistent with age appropriate accidental injuries. Many of the injuries resulted in 51A's from mandated reporters but Mr. Plante never sought medical care.

f.  In 2010, after parenting time with Mr. Plante, Mother began to notice a rash form on B.H.'s hand and arm which caused her skin to peel off her body. Father refused to seek medical attention for the child. Mother sought immediate medical attention and discovered the Mr. Plante was allowing B.H. to sleep on a dirty futon that was disease and bacteria ridden due to cat feces.

g.  On multiple occasions, B.H. returned from parenting time with Mr. Plante ill (ex. sore throat, fever, vomiting) despite illness Mr. Plante never sought medical attention for B.H.

118.  The following actions are consistent with DCF's definition of neglect yet DCF never supported a finding against Plante after receiving this information. DCF's failure to act suggests that DCF authorizes these actions. Mr. Plante has consistently used poor judgment and exercised inappropriate, sexualized behavior with B.H. For example:

a.  The sexual assault which occurred in December 2014 described in detail above.

b.  As B.H. has developed into a young woman, Mr. Plante began interrupted B.H. while she changed to watch her undress. There is no justification for why he has repeatedly done this even after B.H. begged him to stop and his response was that he didn't have to leave, but he would close his eyes. Instead he would face the window and watch her reflection. It was when she caught him that B.H. sickeningly realized he had been watching her undress and began to lock herself in the bathroom to protect herself.

c.  Mr. Plante played inappropriate sexual games with B.H. such as "Bucking Bronco"" in which he wrestled with the child on the bed he shared with Mrs. Kane Plante telling her to sit on his back and hold on to him while he laid on top of the bed

rubbing himself on the bed as he "bucked" to make her fall off. Mrs. Kane Plante was aware of these games and refused to protect her.

d. Mr. Plante has exposed B.H. to adult movies and adult websites such as "sex.com" during his parenting time.

e. Mr. Plante has used picture of him and B.H. in bed together with his hands under the covers on his genitals as his picture on dating websites.

f. Mr. Plante has admitted to sleeping naked with B.H. and his then girlfriend Alysia Mock in his bed.

g. Both Mr. Plante and Mrs. Kane Plante have solicited sex online during Mr. Plante's parenting time with B.H. and Mr. Plante has admitted to inviting these strangers for a few drinks and to frequent his home exposing B.H. to an unsafe environment.

119. All above actions are consistent with DCF's definition of neglect, abuse, and sexual abuse yet DCF's failure to act suggests that DCF authorizes these actions.

120. Over the course of multiple DCF actions, Ms. Harding provided each DCF investigator with validated information which evidenced true harm to B.H and potential for future harm absent assistance from DCF. This documentation has been actively disregarded. And almost all of the information provided by Ms. Harding to DCF is not in her case file. In stark contrast, the manipulative and edited documents provided by Mr. Plante have been documented in detail. The following information has been provided to DCF by Ms. Harding and ignored:

a. Pediatrician Records

b. ER Records

c.  Pictures of Injuries caused to B.H. by Mr. Plante and as a result of neglect by Mr. Plante

d.  School Records of Accomplishments

e.  Nurse Records depicting inconsistencies and over involvement in the 2013 investigation

f.  Deposition transcripts

g.  Harassing E-mails by Mr. Plante

h.  Copies of Mr. Plante abusive Text messages

i.  Time stamped Videos of Injuries and Mr. Plante's Abuse

j.  Certified Phone Records

k.  Certified Driving Records (MA and NH)

l.  Certified Sexual Postings on Craigslist by Mr. Plante and Mrs. Kane Plante

m.  Postings on social media sites (Facebook, Twitter, Instagram).

n.  ARRT Sanctions of Mr. Plante due to his breach of Ms. Harding's private medical records.

o.  Division of Professional Labor (DPL)Complaints filed against Rena Ugol, Shannon Daignault, Lyn Mello and Christine Dooley Nesbit.

p.  Probate Court Documents

q.  Proof Mr. Plante committed insurance fraud and filed fraudulent police reports.

r.  Altered DCF records by Mr. Plante used to manipulate the Probate Court.

121.  This documentation corroborated Ms. Harding's repeated requests for help protecting B.H. from Mr. Plante:

a.  The pediatric and Emergency Room records of B.H. evidenced physical abuse while in Mr. Plante's home,

b.  The Probate Court judgments of neglect against Mr. Plante and Mrs. Kane Plante proved B.H was neglected and not adequately supervised while in the Plante's home resulting in severe physical and traumatic injury.

c.  Social media posts confirmed  Mr. Plante's and Mrs. Kane Plante's excessive use of alcohol during visitation which placed B.H in danger and that B.H was repeatedly exposed to violent, vulgar and immoral sexual acts  by Ms. Kane Plante's older children via the internet and media while in Mr. Plante's home,

d.  Certified records authenticated that Mr. Plante was soliciting sex online using images of the minor child and putting the child in danger. But for DCF actively choosing to ignore these proven patterns of depravity by Mr. Plante and Mrs. Kane Plante, and investigate further, B.H would not have suffered further harm at the hands of Mr. Plante.

122.  As a result of DCF's failure to act and the actions multiple social workers, Ms. Harding filed complaints to the DPL against specific social workers in Cape Ann office, none of which have been properly attended to, and Ms. Harding was denied access to the DPL hearing and the associated court documents.[26]

123.  As a result of the way DCF mishandled their investigations and the evident bias shown towards Ms. Harding, Ms. Harding filed two grievances with DCF none of which were

---

[26] (SEE EXHIBIT A)

properly attended to. In fact, John Doyle first accepted, and then specifically denied Ms.

Harding's request for an in person meeting to address her concerns.[27]

124.    DCF's action resulted in providing Mr. Plante with two defamatory documents which Mr.

Plante has repeatedly utilized to destroy Ms. Harding's credibility and deflect attention

away from his abusive and controlling actions. The first defamatory document was the

2011 rationale from Judge Jeffrey Abber which was the result of the "lost" fax by DCF

and non-documentation of calls by the guidance counselor, and the second defamatory

document was the fictionalized 2013 51B report which was given to Mr. Plante by DCF

without proper authorization and which Mr. Plante edited prior to the May 20, 2013 court

date in order to influence the Probate Court against Ms. Harding.

125.    DCF's actions combined with these derogatory documents further allowed and

empowered Mr. Plante to harm Ms. Harding through an onslaught of harassing electronic

communication. Between 2011 and 2015, Mr. Plante sent a barrage of e-mails and

duplicate texts, left multiple phone messages taunting Ms. Harding with nonsensical

demands for time changes, claims of vulgarity, and threats of further court actions. As

Mr. Plante has consistently included Ms. Harding's attorney on his e-mail rants with the

intent to increase Ms. Harding's legal fees, there is an abundance of evidence to this

violation of M.G.L. Chapter 258E. Section 1.

126.    These same phone records demonstrate the obsessive interactions between Mr. Plante and

Mrs. Kane Plante which escalated after Mr. Plante was given more visitation time with

B.H. in 2011. Comparing 2011 and 2012 phone records show Mrs. Kane Plante increased

her texts to Mr. Plante during each Wednesday night visitation and any time Mr. Plante

was not with Mrs. Kane Plante. 2012 phone records show over nine-thousand text/calls,

---

[27] (SEE EXHIBIT A)

from/to Mrs. Kane Plante, most during Mr. Plante's work hours, and ranging from fifty to over one hundred for each eight-hour work shift. Mr. Plante works in the radiology department at Lahey Clinic, which is reliant on his being focused on patients. This documented disregard for patient care and obsessively monitoring behavior should have factored into DCF's evaluation of Mr. Plante's mental health. Yet the information was ignored.

127.   DCF has harmed and continues to harm the Plaintiffs in the following ways:

   a.   DCF failed to adequately respond to Ms. Harding's numerous concerns regarding the safety of B.H while in the care of Mr. Plante;

   b.   DCF failed to adequately investigate multiple 51As lodged against Mr. Plante by reputable and respected mandated reporters that are actively involved in the life of B.H. Had Ms. Harding's strenuously voiced concerns been properly investigated and the proper services been put into place, DCF would have adequately protected the Plaintiff B.H and greater harm would not have been caused by the hand of Mr. Plante;

   c.   DCF pursued an unnecessary investigation against Ms. Harding which violated Ms. Harding's constitutional rights to parent free from harm, infringed upon Ms. Harding's time with her child and resulted in the Mr. Plante increased access to the child therefore causing greater harm.

   d.   Ms. Harding was not afforded appropriate appellate procedures therefore causing reputational and emotion damage.

128.   Due to DCF's bias against Ms. Harding and out of retaliation for filing complaints with the DPL, Ms. Harding was treated differently than another similarly situated individual.

129.    DCF is mandated to treat all people with respect, take all claims seriously and take all

parties into consideration when creating service plans. The treatment of Ms. Harding fell

well below this standard. DCF and the social worker's treated Ms. Harding with extreme

disrespect making unfounded comments about her religion and personal life, they failed

to take Ms. Harding's claims and concerns seriously, and they tormented her child, and

falsified records.

130.    The above and other harms are caused by Defendants' failure to effectively manage

DCF's practices, effectively manage their employees from acting outside the scope of

their employment, as well as other reasons.

131.    Defendants, Lynda Browne, Maria Delaney, Pamela Gray, Mary Doherty, Rena Ugol,

and John Doyle did not adhere to the duty of care that is required and expected of them in

their profession. The Restatement (Second) of Torts defines a breach as occurring when a

professional fails to uphold such a standard of care and an injury results. The Restatement

(Second) of Torts defines negligence as "conduct that falls below the standard established

by law for the protection of others against unreasonable risk of harm,"

132.    The term "duty of care" is a legal obligation to provide care and support for individuals

from children to adults using services as well as colleagues and others. A care worker

will need the abilities to work to the best interests of a child or adult who uses the

services. The care practice itself should also prioritize to promote the health, well-being

and safety of all children or adults who receive care and support.

133.    Plaintiffs did in fact suffer further harm as a result of Defendants, and the breached duty

of the social workers. The social workers ignored Ms. Harding's desperate and repeated

pleas for assistance. Despite Ms. Harding's plea for help and the pleas of B.H that she did

not feel safe with Mr. Plante, the social workers refused to investigate the matter further, despite evidence that multiple complaints and concerns have been made and documented against Mr. Plante.

134. But for DCF's reckless and wanton disregard for the safety of the minor child, additional harm would not have occurred as Mr. Plante would not have had access to the minor child and B.H would not have been exposed to a toxic environment with Mrs. Kane Plante and her older children.

135. But for DCF's failure to act, B.H would not have suffered additional physical, emotional, and mental harm at the hands of Mr. Plante.

136. DCF's negligent acts as described herein, were the factual and proximate cause of the harm B.H suffered, due to the clear and convincing evidence provided to DCF, as well as the extensive history and records DCF presently possess, and Mr. Plante's inability to parent.

137. A DCF employee, agent, or servant, has a duty, and moral obligation to protect the best interests of children in need, and from future harm. It is unconscionable given the history of Mr. Plante with DCF and the volumes of concerning information provided to the social workers of the injuries inflicted on B.H. by Ms. Kane Plante's older daughter A.M. or the violent publicly posted homemade videos by Mrs. Kane Plante adult son Tyler Johnson- one which depicted Mr. Plante's death by Mr. Johnson, that the social workers and DCF did not act in the best interest of B.H to protect her from harm.

138. Lynda Browne's, Maria Delaney's and others conduct as a social worker for DCF, fell far below the professional standard of care required, and *assuming arguendo*, was grossly

negligent, as they clearly demonstrated a reckless and wanton disregard for the safety of a child they are obligated to assist and protect.

139.   Mr. Plante owed a duty of care to B.H. as her father not to harm and abuse her. Mr. Plante breached this duty on multiple occasions. But for this breach B.H. would not have suffered harm.

140.   Ms. Kane Plante owed B.H. a duty of care when B.H. was in her home. Ms. Kane Plante was acting in loco parentis when B.H. had visits in her home. Ms. Kane Plante had a duty to protect B.H. from harm and report any knowledge of harm. Ms. Kane Plante failed to do so and breached her duty of care to B.H. But for this breach B.H. would not have suffered harm.


## COUNT I- VIOLATION OF 42 U.S.C §1983


141.   Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

142.   The Defendants were deliberately indifferent to or tacitly authorized the wrongful conduct described above, and were deliberately indifferent to or tacitly authorized the wrongful conduct by ignoring the allegations of abuse and neglect against Mr. Plante of which they were, or reasonably should have been, aware.

143.   The defendants' failure to address adequately the allegations of abuse against Mr. Plante caused Plaintiffs to be subject to damages

144.    The defendants' deliberate indifference by actively abetting Mr. Plante in the Probate
        Court proceedings, and tacit authorization of his abuse and neglect caused B.H. to be
        subject to damages

145.    The defendants' failure to make true and accurate representations to the courts of the
        Commonwealth regarding Mr. Plante, allegations of abuse, and Ms. Harding caused B.H.
        to be subject to damages

146.    The actions and inactions of the defendants were part of a custom or policy that caused
        B.H. to be physically, mentally and emotionally harmed.

147.    As a consequence of such custom or policy, Plaintiffs have been deprived by the
        defendants, under color of law, of the rights, privileges and immunities secured by the
        Constitution and laws of the United States, including the right to be free from intrusions
        of bodily integrity, fundamental rights to privacy and freedom from excessive
        interference with raising a family

148.    As a direct and proximate result of such deprivation, B.H. suffered physical injuries,
        indignities, humiliation, severe emotional distress, mental anguish, and invasion of bodily
        integrity.

149.    As a direct and proximate result of the acts and omissions described in this complaint,
        Defendants are liable in damages to Plaintiff for deprivation of her civil rights under 42
        U.S.C.A § 1983.


## COUNT II – SECOND CLAIM FOR RELIEF 42 U.S.C §1983 – DEFENDANTS' VIOLATION OF FOURTH AND FOURTEENTH AMENDENT RIGHTS OF THE UNITED STATE CONSTITUTION

150.    Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

151.    Plaintiffs are informed and believe and thereupon allege that Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or representatives each of the other and were acting in such course, scope and capacity at all times herein mentioned.

152.    Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante) are charged with the responsibility and duty to protect and serve the public by properly hiring, supervising, and training, and disciplining and controlling child protective service workers under their command. This duty includes promulgations and enforcement of rules and regulations regarding abuse of discretion and abuse of process in the investigation of allegations of child abuse and neglect.

153.    Upon information and belief, Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante) failed to promulgate adequate rules and regulations regarding abuse of discretion and abuse of process in the investigation of allegations of child abuse and neglect and further failed to instruct, discipline and train social workers in the appropriate methods for handling the investigating allegations of child abuse and neglect without resort to abuse of discretion and abuse of process.

154.    Upon information and belief, Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante) established through tacit authorization or explicit instruction a policy or custom of allowing child protective service workers to commit abuse of discretion and

abuse of process. That policy was enacted and enforced with deliberate indifference to the constitutional rights of B.H who is affected by this policy.

155.   Upon information and belief, Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante) custom of failing to properly hire, supervise, train, discipline, and control child protective workers under their command including Lynda Browne and others, their failure to insure compliance with the laws, rules, and regulations regarding the abuse of discretion and abuse of process amounts to deliberate indifference to the rights of persons with whom the child protective workers come into contact, including the rights of both Plaintiffs in this case.

156.   Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante) custom and policy of allowing abuse of discretion and abuse of process and their failure to properly hire, supervise, train, discipline, and control child protective services workers under their command, including Lynda Browne and others was so reckless or grossly negligent that misconduct involving abuse of discretion and abuse of process was inevitable as of the date of the incident giving rise to this complaint.


## COUNT III –RETALIATION FOR PROTECTED ACTIVITY


157.   Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

158.   Plaintiffs are informed and believe and thereupon allege that Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or

representatives each of the other and were acting in such course, scope and capacity at all times herein mentioned.

159.    Plaintiff, Ms. Harding has filed Grievances with DCF and individual complaints with the Department of Professional Licensure against social workers and employees of DCF an act which is protected by the freedoms guaranteed by the First Amendment of the Constitution.

160.    Plaintiff, Ms. Harding was within her rights to file these complaints based on the acts and omissions of the above named social workers

161.    Many of the same social workers, namely Rena Ugol and Lyn Mello, continued to have active participation in the case and were not removed despite the conflict of interest these complaints caused.

162.    Once these complaints were filed against the social workers and they were not removed from the case, the individual social workers were given the opportunity to retaliate and did retaliate against Ms. Harding and the resentment harbored against plaintiff for filing complaints with the Department of Professional Licensure resulted in an apparent abuse of discretion and further harm to B.H.


## COUNT IV – SUBSTANTIVE DUE PROCESS UNDER THE U.S CONSTITUTION

## ASSERTED BY ALL NAMED PLAINTIFFS


163.    Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

164.    Plaintiffs are informed and believe and thereupon allege that Defendants (excluding

Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or

representatives each of the other and were acting in such course, scope and capacity at all

times herein mentioned.

165.    The actions of Defendants in their official capacities, constitute a failure to meet their

respective duties to protect B.H and keep her free from harm, which is a direct factor

leading to, and proximate cause of the violation of the constitutionally protected liberty

and privacy interests of the Plaintiffs.

166.    The actions and/or inactions referenced above equated to the Defendants, constitute

policies, patterns, practices, and customs inconsistent with the exercise of professional

judgment and is synonymous with intentional indifference to the constitutionally

protected rights and liberty interests of the herein named plaintiffs. As a result, the

Plaintiffs were harmed, continue to be harmed and remain at risk of being harmed.


## COUNT V – PROCEDURAL DUE PROCESS ASSERTED BY ALL NAMED PLAINTIFFS


167.    Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat,

reallege, and reaver each such averment hereinafter with the same force and effect.

168.    Plaintiffs are informed and believe and thereupon allege that Defendants (excluding

Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or

representatives each of the other and were acting in such course, scope and capacity at all

times herein mentioned.

169.   DCF's process deprived Plaintiff of her rights of procedural due process. When a concern is "substantiated" by DCF rather than "supported" there is no procedure, such as a fair hearing, to dispute the determination. Such a determination is detrimental to one's reputation, employment and livelihood. Thus this process is a violation of Plaintiff's procedural due process rights

## COUNT VI –NEGLIGENCE

170.   Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

171.   Plaintiffs are informed and believe and thereupon allege that Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or representatives each of the other and were acting in such course, scope and capacity at all times herein mentioned.

172.   On October 12, 2012, B.H was physically assaulted while in the home of Mr. Plante, as more fully described above. An investigation ensued and DCF was provided with numerous records which documented Mr. Plante's unfitness to be a parent and the danger that was posed to B.H while in his home.

173.   Despite this knowledge, DCF failed to support neglect by Mr. Plante. Ultimately a Judge did find that Mr. Plante and Mrs. Kane Plante were guilty of neglect despite DCF's actions to ignore the abuse.

174.   Ms. Harding continued to provide evidence to DCF of the dangers posed to B.H while in Mr. Plante's care.

175.   In or around December 26, 2014, B.H was traumatized by a sexual assault by Thomas Plante and expressed grave concerns regarding her safety at Mr. Plante and Mrs. Kane Plante's home, as more fully described above. The Defendants were notified of the same and initiated a shoddy investigation into the allegations. The Defendants possessed knowledge documented by way of previously DCF involvement and documentation provided by Ms. Harding at times previous of serious concerns regarding Mr. Plante that indicated a pattern of serious sexual concerns.

176.   With the knowledge the Defendants possessed and the multiple warning they received, the Defendants owed a duty to the child to provide the necessary assistance to the child to ensure that the child is safe from future harm. DCF failed to do this and as a result future harm resulted.

177.   The Defendants had a duty to protect the safety and wellbeing of the minor child and breached that duty by failing to legitimize the multiple concerning reports they received. But for Defendants callous disregard towards numerous, and substantiated valid concerns B.H was caused to suffer greater harm.

178.   Mr. Plante owed a duty of care to B.H. as her father not to harm and abuse her. Mr. Plante breached this duty on multiple occasions. But for this breach B.H. would not have suffered harm.

179.   Ms. Kane Plante owed B.H. a duty of care when B.H. was in her home. Ms. Kane Plante was acting in loco parentis when B.H. had visits in her home. Ms. Kane Plante had a duty to protect B.H. from harm and report any knowledge of harm. Ms. Kane Plante failed to do so and breached her duty of care to B.H. But for this breach B.H. would not have suffered harm.

180.   The Defendants disregard for a child they had reason to know was in danger of harm was the direct and proximate result of the physical and mental pain, suffering and harm, suffered by the Plaintiffs, and each of them, in a manner, extent and amount subject to proof at trial, and further requiring medical assistance, care and treatment in an extant, amount and manner subject to proof at trial, and further directly and proximately resulting in loss of wages, employment opportunities, benefits and advantages subject to proof at trial as to extent, manner and amount.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

181.   Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

182.   Plaintiffs are informed and believe and thereupon allege that Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or representatives each of the other and were acting in such course, scope and capacity at all times herein mentioned.

183.   The Defendants owed a duty to the plaintiffs, breaching that duty owed to the Plaintiffs to protect against future harm and promote the best interest and well-being of the child, caused harm, being the direct and proximate result of their failure to adhere to the specific duty of the care that is required of professionals to uphold a standard of care expected in their profession, which breach of said duty resulted in significant harm and damages.

184.   The minor child suffers from physical symptomology on a day to day basis as a result of the suffering she endured.

185.   As a proximate result of the Defendants harm, Plaintiff's symptoms continue to physically manifest on a day to day basis, due to Defendants' negligent conduct, and but for Defendants negligence causing harm, and thus the proximate cause of Plaintiff's emotional distress.

186.   When Defendants acted as described above, it was foreseeable that their actions would cause serious emotional distress to the Plaintiffs. Notwithstanding their knowledge that their actions would cause serious emotional distress to the Plaintiffs, or the fact that they should have known that such a result would probably occur, Defendants continued in their course of wrongful conduct as alleged in this complaint.

187.   The above-mentioned acts of the Defendants constituted negligent infliction of emotional distress on the Plaintiffs. Plaintiffs suffered and continue to suffer severe mental and emotional distress. As a result of such severe of said mental and emotional distress the Plaintiffs have been injured in an amount within the jurisdiction of this Court, which damages continue to accrue, and will be proved at the trial of this action.


COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS


188.   Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

189. As a result of the intentional extreme and outrageous conduct of the defendants, the plaintiffs suffered severe emotional distress and other injuries that these defendants knew or should have known would be and was the likely result of their actions

## COUNT IX – LOSS OF CONSORTIUM

190. Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

191. At all times material to this action, Ms. Harding has been B.H.'s biological parent

192. As a direct and proximate result of the defendant's negligence, Ms. Harding has been deprived of the love, affection, companionship, care and services, of her child, B.H. and is entitled to recovery for said loss. As a cancer survivor, the stress caused by DCF, Mr. Plante and Mrs. Kane Plante has had a compounded effect on Mrs. Harding and the time with her child taken from her is unconscionable. At the time of this filing, Ms. Harding's cancer has reoccurred, and she is currently undergoing aggressive chemotherapy prior to two separate surgical procedures to fight for the time she has left with her child. Time which DCF had stolen from them both.

## COUNT X – PUNITIVE DAMAGES

193. Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

194.    Plaintiffs are informed and believe and thereupon allege that Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or representatives each of the other and were acting in such course, scope and capacity at all times herein mentioned.

195.    In addition to compensatory damages, Plaintiff hereby make a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of defendants, to include violation of Plantiffs' civil rights, as alleged in this complaint. The acts and omissions of defendants in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the lives and safety of others, including plaintiffs. Defendants committed the acts and omissions alleged in this complaint and subjected plaintiffs to improper treatment that caused both plaintiffs to suffer emotional distress, coupled with financial loss. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

196.    The recovery of putative damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others, and is thus appropriate in this case.


## COUNT XI – ATTORNEY'S FEES


197.    Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

198.   Plaintiffs are informed and believe and thereupon allege that Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or representatives each of the other and were acting in such course, scope and capacity at all times herein mentioned.

199.   As a result of defendants' actions as alleged in the complaint, plaintiffs have been required to retain multiple attorneys and are entitled to a reasonable amount for attorney's fees pursuant to 42 U.S.C.A § 1988 for those violations covered by the Civil Rights Act.


<u>DAMAGES</u>


200.   Plaintiffs incorporate each and every allegation as set forth hereinabove, and repeat, reallege, and reaver each such averment hereinafter with the same force and effect.

201.   Plaintiffs are informed and believe and thereupon allege that Defendants (excluding Thomas Bernard Plante and Ginette Kane Plante), were the agents, servants, and/or representatives each of the other and were acting in such course, scope and capacity at all times herein mentioned.

202.   The acts and omissions of Defendants as set forth above have resulted in injury to Ms. Harding and B.H. By virtue of these injuries Plaintiffs are entitled to the following damages:

a.   Humiliation and sociological distress

b.   Loss of foreseeable income

c.   Punitive damages in a reasonable and adequate amount

d.  The costs of this action, attorney's fees, and such other and further relief as this Court

deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

a.      Assert Jurisdiction over this action;

b.      Declare unconstitutional the acts and omissions of the Department of Children

and Families;

c.      Amend and strike the records kept by the Department of Children and Families to

uphold Plaintiffs' constitutional rights and order other appropriate remedial relief;

d.      Permanently enjoin Defendants from subjecting Plaintiffs to practices that violate

their rights;

e.      Compensatory damages in an amount that will be fairly and justly compensate the

Plaintiffs for the violation of their civil rights, their pain and suffering, and their

attorney's fees;

f.      Punitive damages in an amount sufficient to punish Defendants including Thomas

Bernard Plante and Ginette Kane Plante and to deter future conduct of this type

alleged in this complaint with interest and costs;

g.      Grant such other and further equitable relief as the Court deems just, necessary

and proper to protect from further harm.

## JURY DEMAND

Plaintiffs demand that this matter be tried to a jury on all facts so triable.

RESPECTFULLY SUBMITTED,
Debra Harding,
By her attorneys,

**Dated:**                          /s/ Sarah J. Briones_____
Sarah J. Briones Esq.
BBO#566823
Tammie M. Baum Esq.
BBO# 685153
Briones Law Group
40 Mechanic Street, Suite 301
Marlborough, MA 01752
Tel: (508) 460-8324
Sarah@BrionesLawGroup.com
Tammie@BrionesLawGroup.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court District of Massachusetts by using the CM/ECF system on October 12, 2016. I certify that this document will be sent to the registered participants through the CM/ECF System and paper copies will be sent to any non-registered participants

/s/ Sarah J. Briones